# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SURGIBIT IP HOLDINGS Pty, Ltd, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 13 CV 8839 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| LIAM PATRICK ELLIS, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, United States District Court Judge

On December 11, 2013, Plaintiffs Surgibit IP Holdings Pty, Ltd ("Surgibit") and Orthopedic Innovation Pty, Ltd ("Orthopedic") (collectively, "Plaintiffs") filed this action against Defendants Liam Patrick Ellis ("Ellis"), and Cingular Pty, Ltd ("Cingular-A") (collectively, the "Australian Defendants"), and Orchid Orthopedic Solutions, LLC ("Orchid") (collectively, "Defendants"), alleging that Defendants conspired to infringe, and did infringe, on patent rights belonging to Plaintiffs. Both Plaintiffs are Australian corporations. Orchid is a Delaware corporation with its principal place of business in Michigan. Ellis and Cingular-A are both citizens of Australia. While Orchid responded to and participated in the ensuing litigation—negotiating a settlement in due course—the Australian Defendants did not. After Ellis and Cingular-A did not answer Plaintiffs' complaint, Plaintiffs received a default money judgment and injunction on June 20, 2014. The Court later sanctioned the Australian Defendants due to their willful violations of the injunction. Before the Court is the Australian Defendants' motion to vacate the Court's orders, pursuant to Federal Rule of Civil Procedure 60(b)(4), on grounds that the Court does not have personal jurisdiction over them. As part of their response to the

motion, Plaintiffs filed a cross-motion asking the Court to extend the default judgment to two new, unnamed parties. For the following reasons, both motions are denied.

## I. BACKGROUND

### A. Background to the Dispute

The parties' motions come before the Court after a default judgment was entered against the Australian Defendants. The matter's underlying merits are not at issue, and the Court discusses the substantive facts of the case only to add context to resolving the matter's jurisdictional issues. The parties do not contest the following facts. Beginning in August 2002, Ellis was an employee and shareholder of Surgibit. In this capacity, Ellis invented a series of surgical drill bits that are used in orthopedic surgery, and assigned his interests in the resulting patents to Surgibit. In 2004, Surgibit granted Orthopedic an exclusive, worldwide license to exploit the drill-bit patents. In 2007, Ellis left Surgibit; as part of the separation, the parties executed a deed of settlement and release on March 27, 2007.

After he left Surgibit, Ellis began designing and manufacturing "CingleBits," a surgical drill bit used in orthopedics. On February 3, 2010, Ellis incorporated Cingular-A in Noosa Heads, Queensland, Australia, and made himself a director and officer. On January 31, 2011, Ellis formed CPL Holdings Pty Ltd ("CPL"), and as sole shareholder, named himself a director and officer of that corporation. Ellis later transferred majority ownership of Cingular-A to CPL. On July 11, 2011, Ellis incorporated "Cingular Orthopaedics International Holdings Limited," ("Cingular-HK") based out of Central, Hong Kong Special Administrative Region, China, and named himself the sole director. See Pls.' Cross-Mot. to Extend J. & Contempt Orders (Dkt. 44, 48 & 54) to CPL Holdings Pty, Ltd. and Cingular Orthopaedics International Holdings, Ltd. [hereinafter "Pls.' Mot. to Extend"], Ex. B 1. Although the patents were never approved,

Cingular-HK held itself out to Orchid as licensee of the CingleBits, and Cingular-HK granted a license to Orchid for Orchid to distribute, manufacture, and market CingleBits in the United States, which Ellis signed. In 2012, Ellis traveled to the American Academy of Orthopedic Surgeons' ("AAOS") convention, in San Francisco, California. At the convention, Ellis demonstrated the efficacy of Cingular's CingleBits, which was observed by one of Surgibit's officers.

The following year, Ellis demonstrated CingleBit at the AAOS's 2013 convention and at the Orthopedic Manufacturing & Technology Exposition and Conference ("OMTEC") in Chicago and Rosemont, Illinois, respectively, this time acting as a corporate agent of Orchid, not in his capacity as Cingular-A's owner. While he distributed Orchid sales literature at the convention, Ellis also distributed his business card to prospective purchasers, which listed both the Australian and Hong Kongese Cingulars. One of Orthopedic's officers observed Ellis's demonstration and took a copy of the sales literature and Ellis's business card.

The marketing and demonstrations at the trade shows and conventions proved fruitful for Ellis and his corporations: Orchid closed its first of many sales of Cingular products approximately one month after the shows. Meanwhile, Plaintiffs believed that Defendants had infringed on their patents and—acting through their counsel—sent letters to Ellis, Cingular-A, and CPL, demanding that Defendants cease and desist their infringement. As the correspondence failed to stop Defendants from selling and distributing CingleBits, Plaintiffs filed this action against Defendants Ellis, Cingular-A, and Orchid on December 11, 2013. Plaintiffs did not name Cingular-HK or CPL in their complaint.

**B. Post-Complaint History**

Orchid waived service and settled the claim Plaintiffs made against it shortly thereafter;

3

Orchid is not a party to the motions currently before the Court. After Plaintiffs' attempts to serve the Australian Defendants through the mail failed, Plaintiffs hired a special process server, who served Ellis—but not Cingular-A—in Australia on January 20, 2014. On the day Ellis's answer to the complaint was due, an attorney from New York contacted counsel for Plaintiffs, stated that he was not instructed to accept service or appear in the case, but orally requested an extension of time to answer the complaint, to which Plaintiffs agreed. On March 11, 2014, Ellis—who had still not appeared—filed an unsolicited communication *pro se* and on behalf of Cingular-A, which sought to dismiss the case for lack of personal jurisdiction and improper service of process. The communication also claimed that the case should be dismissed because Ellis disputed who actually owned the patents at issue. As this communication was filed by a party who had not yet appeared, the Court disregarded Ellis's communication. See N.D. Ill. R. 5.6.

To resolve concerns about the validity of the service in Australia, Plaintiffs served Ellis—both individually and on behalf of Cingular-A—on March 12, 2014, while he was at the AAOS's convention in New Orleans, Louisiana to demonstrate his CingleBit. After Ellis and Cingular-A failed to timely answer the complaint, Plaintiffs moved to default Ellis and Cingular-A on April 22, 2014. A day later, Ellis sent another unsolicited communication to the Court, which the Court also disregarded. The Court ordered Ellis and Cingular-A in default on April 29, 2014, and entered a default judgment and an injunction against them on June 20, 2014.

As part of their prove up, Plaintiffs introduced evidence that "[b]ased on discovery obtained from [manufacturers/distributors in the United States], there [were] 41,181 CingleBit and/or CinglePin products sold in the USA." Decl. John Wilson Pursuant to 28 U.S.C. § 1746 ¶ 8, Pls.' Mot. Enter Liquidated J., Ex. 1. On February 5, 2015, the Court liquidated the judgment against Ellis and Cingular-A in the amount of $1,013,480.28, jointly and severally. In the midst

of the default proceedings, the Court also found Ellis and Cingular-A in contempt for failing to stop their infringement of Surgibit's patents.

On June 18, 2015—more than four months after the Court entered a liquidated default judgment award—counsel for Ellis and Cingular-A entered his appearance, and now moves this Court to vacate the Orders dated April 29, 2014 [Dkt. 39]; June 20, 2014 [Dkt. 44]; June 26, 2014 [Dkt. 48]; September 5, 2014 [Dkt. 54]; and February 5, 2015 [Dkts. 72 and 74]. These Orders respectively (1) held the Australian Defendants in default, (2) entered judgment against the Australian Defendants, (3) imposed a supplemental injunction against the Australian Defendants, (4) found the Australian Defendants in civil contempt, and (5) liquidated the judgment award against the Australian Defendants. The Australian Defendants state that the orders are void pursuant to Federal Rule of Civil Procedure 60(b)(4) and argue that the Court never had personal jurisdiction over them because they never conducted commercial activity in the United States. Rather, they argue, Cingular-HK was the entity that sold the CingleBits to Orchid, and was never served by Plaintiffs or joined in the complaint. Plaintiffs respond by arguing that the Court does have personal jurisdiction over all Defendants, and have filed a cross-motion asking the Court to "extend the judgment and contempt order" to CPL and Cingular-HK. Mem. Opp. Mot. to Vacate & Supp. Cross-Mot. to Extend J. to CPL Holdings Pty, Ltd. & Cingular Orthopaedics Int'l Holdings, Ltd. 14 [hereinafter "Pls.' Mem."]. The matters are now fully briefed and before the Court.

## II. DISCUSSION

### A. Ellis's and Cingular's Rule 60(b)(4) Motion

*1. Standard of Decision for a 60(b)(4) motion for relief from judgment.*

A party with a final judgment entered against it may move the Court for relief from the judgment if the party can show it is void. Fed. R. Civ. P. 60(b)(4); see also Philos Techs., Inc. v. Philos & D, Inc., 645 F.3d 851, 855 (7th Cir. 2011). One type of void judgment is a judgment entered against a defendant, over which the Court did not have personal jurisdiction. be2 LLC v. Ivanov, 642 F.3d 555, 557 (7th Cir. 2011) ("When a district court enters a default judgment without personal jurisdiction over the defendant, 'the judgment is void, and it is a per se abuse of discretion to deny a motion to vacate that judgment.'") (quoting Relational, LLC v. Hodges, 627 F.3d 668, 671 (7th Cir. 2010)).

While ordinarily the plaintiff bears the burden of showing that the Court has personal jurisdiction over defendants, the roles are reversed in the context of a Rule 60(b) motion when the defendants had notice of the proceedings. Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 401 (7th Cir. 1986) (shifting the burden to defendants because post-judgment personal-jurisdiction contests prejudice the plaintiff by reducing the availability of evidence needed to prove jurisdiction) (internal citations omitted), cited with approval in Philos Techs., 645 F.3d at 857. Accordingly, the Court's judgment is void if the Australian Defendants can prove that the Court does not have personal jurisdiction over Ellis and Cingular-A.

*2. Whether the Court has personal jurisdiction over Ellis and Cingular-A.*

Because the underlying merits of this case involve patent law, any prospective appeal from this case would likely be heard by the Court of Appeals for the Federal Circuit, not the Seventh Circuit. See 28 U.S.C. § 1295(a)(1). It follows that Federal Circuit law governs whether the Court has personal jurisdiction over Ellis and Cingular-A. See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico, 563 F.3d 1285, 1292 (Fed. Cir. 2009); see also Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) ("Because the issue of

personal jurisdiction in a declaratory action for patent invalidity and non-infringement is intimately related to patent law, personal jurisdiction . . . is governed by the law of this circuit.").

Federal Rule of Civil Procedure 4(k) provides two avenues for the Court to exercise personal jurisdiction over a defendant. See Synthes, 563 F.3d at 1293. Rule 4(k)(1) allows a federal district court to assert jurisdiction over a defendant if, *inter alia*, the defendant would be subject to the jurisdiction of the state in which the district court sits. Id. (citing Fed. R. Civ. P. 4(k)(1)(A)). On the other hand, if the defendant is not subject to personal jurisdiction in any state, and there is a claim arising under federal law, Rule 4(k)(2) allows the district court to have jurisdiction over the defendant if the defendant has "'affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party.'" Id. at 1295 (citing Fed. R. Civ. P. 4 advisory committee's notes to 1993 amendment). When a defendant challenges the district court's jurisdiction over him, and does not specify a state that would have personal jurisdiction, the Court can use the "federal long-arm" specified in Rule 4(k)(2) and find jurisdiction, provided that the defendant has "minimum contacts" with the United States as a whole. Synthes, 563 F.3d at 1295 (quoting ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001)). In this case, Ellis and Cingular-A both proclaim that they are not subject to personal jurisdiction in Illinois; they do not, however, name a more appropriate state that could assert jurisdiction over them. Accordingly, and pursuant to Rule 4(k)(2), the Court determine whether the Australian Defendants had sufficient minimum contacts with the United States necessary to establish personal jurisdiction.

Constitutional due process considerations related to personal jurisdiction are satisfied when the nonresident defendant has "'certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"" Walden v.

7

Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In looking at whether the defendant has sufficient minimum contacts with the forum, the court "focuses on 'the relationship among the defendant, the forum, and the litigation.'" Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Moreover, the relationship between defendant, forum, and litigation must be created by the defendant himself; neither the relationship between the defendant and plaintiff nor between plaintiff and forum is relevant to the issue of whether the forum has jurisdiction over the defendant. Walden, 134 S. Ct. at 1122. To see if there are sufficient minimum contacts, the court looks to whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

In deciding whether the defendant has purposefully availed himself of the privilege of conducting activities within the forum, the Court examines "whether the defendant's activities manifest an intention to submit to the power of a sovereign." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (plurality op.). The manifestation of intent appears through the defendant's targeting of the forum; a mere prediction that the activities could affect the forum is insufficient. J. McIntyre Mach., 131 S. Ct. at 2788 ("[I]t is not enough that the defendant might have predicted that its goods will reach the forum State."). "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." Id. at 2789; see also AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012). In sum, the Court evaluates the Australian Defendants' minimum contacts with the United States, cognizant of the burden that they must carry to prove that they did not intend for their products to be sold in the United States.

8

In this case, the Australian Defendants claim that the Court lacks jurisdiction because they do not do business in the United States. As described *supra*, however, the test is not whether they literally "do business" in the forum, the jurisdictional test is whether the Australian Defendants targeted their products for the United States. See Walden, 134 S. Ct. at 1122; J. McIntyre Mach., 131 S. Ct. at 2788.

The Australian Defendants do not contest that Ellis signed a license agreement for a local distributor (Orchid) to sell products that he invented in the United States. See Defs.' Mem. Supp. R. 60(b) Mot. to Vacate Default J., Inj., & Contempt Orders, Ex.1. Ellis personally demonstrated CingleBits to orthopedists and related professionals in San Francisco, Chicago, and New Orleans. Ellis first visited the United States to sell CingleBits at the AAOS convention in San Francisco as a representative of Cingular. While he claims that he was there representing Cingular-HK, his business card lists both Cingulars, Cingular-A and Cingular-HK. The Australian Defendants, moreover, have not produced sufficient evidence to show that Ellis was in the United States exclusively on behalf of Cingular-HK. Further, and notwithstanding that Ellis purported to be in Chicago and New Orleans on behalf of Orchid, Ellis was present at the conventions for the explicit purpose of inducing the convention-goers to purchase CingleBits, regardless of who actually manufactured and distributed them. While Ellis proffers the license agreement between Cingular-HK and Orchid as proof that neither he nor Cingular-A has contacts with the United States, that agreement does not specify which entity actually owns the intellectual property regarding the CingleBit, only that Cingular-HK is a licensee of the patent rights.

By waiting to challenge jurisdiction until after the Court entered a liquidated default judgment against them, Ellis and Cingular-A carry the burden of proving the Court's lack of

jurisdiction. They have not met this burden. Accordingly, the Court finds that it has personal jurisdiction over Ellis and Cingular-A, and their motion for relief from judgment under Rule 60(b)(4) is denied.

### B. Plaintiffs' Motion to Extend Judgment to CPL and Cingular-HK

In addition to responding to Ellis's and Cingular-A's motion, Plaintiffs also move this Court to extend the Court's judgment and contempt orders to Cingular-HK and CPL. Plaintiffs argue that, in the event the Court has personal jurisdiction over Ellis and Cingular-A, the default judgment and contempt orders should be "extend[ed]" to CPL and Cingular-HK. See Pls.' Mem. 14. In essence, Plaintiffs are asking the Court to implead new parties into the case, after the Court imposed a liquidated default judgment against Ellis and Cingular-A.

In support of their motion, Plaintiffs cite three cases and Rule 65(d)(2)(C), which binds an injunction to "other persons who are in active concert or participation with [the parties]." Fed. R. Civ. P. 65(d)(2)(C). The cited Rule is inapposite; the default order and injunction already enjoins CPL and Cingular-HK to the extent that they would try to participate with Defendants to infringe on Plaintiffs' patents. See Aevoe Corp. v. AE Tech Co., Ltd., 727 F.3d 1375, 1384 (Fed. Cir. 2013) ("A party who acts in concert with an enjoined party, however, may be subject to the strictures of an injunction.").

Plaintiffs' three cases, too, are distinguishable against the facts of this case. In Minnesota Mining & Manufacturing v. Eco Chem, Inc., defendant's shareholders/directors/officers—seeking to avoid a default judgment in a patent infringement action—disbanded Eco-Chem, Inc. 757 F.2d 1256, 1258 (Fed. Cir. 1985) [hereinafter 3M]. They then set up a new corporation, Eco-Chem Limited, exchanged their shares, transferred their assets, started cashing checks that had been payable to Eco-Chem, Inc., and "informed their customers that [Eco-Chem Ltd.] had

succeeded [Eco-Chem Inc.]. Id. at 1258-59. In response, plaintiff moved to substitute Eco-Chem Ltd. as a party pursuant to Rule 25(c), which allows an action to proceed against the transferee of an interest. Id. at 1259. After a hearing, the court substituted Eco-Chem Ltd. for Eco-Chem, Inc. Id. The holding in 3M is inapplicable to this case because there is no evidence to show that Ellis transferred Cingular-A's stock, assets, or the like to Cingular-HK, CPL, or a new entity.

Plaintiffs next cite Taurus IP, LLC v. DaimlerChrysler Corp., 726 F.3d 1306 (Fed. Cir. 2013), for the proposition that "alter ego entities 'should be considered one and the same for jurisdictional purposes.'" Pls.' Mem. 14 (quoting Taurus, 726 F.3d at 1330). In Taurus, however, all of the defendants' alter-egos were parties to the complaint. Id. at 1312-13. No part of the Taurus decision permits Plaintiffs to implead a new, unserved defendant into a case after a default judgment has been entered by the Court.

As their third case in support of their motion, Plaintiffs cite Systems Division, Inc. v. Teknek Electronics, Ltd., 253 F. App'x 31 (Fed. Cir. 2007) (hereinafter Systems), for black-letter law regarding the application of alter ego as grounds for disregarding the corporate entity. Once again, however, the matter before the Court is distinguishable from the facts in Systems. In Systems, plaintiff Systems Division, Inc. ("SDI") sued defendants Teknek Electronics, Ltd. and Teknek, LLC (collectively, the "Original Defendants"). Id. at 33. Two months after the complaint was filed, the Original Defendants' shareholders formed a new corporation, Teknek Holdings, and began transferring the Original Defendants' assets, equipment, and ownership shares to Teknek Holdings. Id. The pattern of asset transfers closely-tracked negative developments for the Original Defendants (e.g. a reversed summary judgment and an eventual jury verdict in favor of plaintiff). Id. at 34. Finally:

> After realizing that almost all of the assets of the Original Defendants had been moved to Teknek Holdings over the course of the infringement litigation and that

11

> the Original Defendants now had no assets to satisfy the [$3.7 million] judgment, SDI filed two motions to add Teknek Holdings and [the defendants' shareholders] in their individual capacity, to the infringement judgment.

Id. The Federal Circuit affirmed the district court's decision to join the new parties in the judgment for reasons that do not apply in this case. First, Federal Rule of Civil Procedure 69(a) allows judgment creditors in a federal case to use the judgment-enforcement mechanisms of the state in which the district sits (in that case, California). See Fed. R. Civ. P. 69(a) (allowing discovery "as provided in these rules or by the procedure of the state where the court is located"). California Code of Civil Practice § 187 permits a judgment creditor to add non-parties in a patent infringement case when the non-parties "controlled the underlying infringement 'litigation, thereby having an opportunity to litigate in order to satisfy due process concerns.'" Systems, 253 F. App'x at 34 (quoting In re Levander, 180 F.3d 1114, 1121 (9th Cir. 1999)). In addition, the Systems Court found that joinder of the new parties was appropriate where the shareholders fraudulently transferred the Original Defendants' assets to the holding corporation—the apparent successor-in-interest to the Original Defendants. Id. at 37.

As they rely on principles related to fraudulent transfers (Systems), successors-in-interest (3M), or procedures governing already-impleaded parties (Taurus), Plaintiffs' cases do not support their position. Initially, Ellis is the controlling party for Cingular-A, CPL, and Cingular-HK; he was properly served and is currently subject to, *inter alia*, a liquidated default judgment. There is no evidence—or even an allegation—that Ellis fraudulently transferred Cingular-A's assets in an effort to avoid the judgment. Plaintiff provides no procedural or factual basis for extending the default judgment entered against Ellis and Cingular-A to CPL and Cingular-HK. The Court has no responsibility to attempt to spin gold from straw and make their arguments for them. See, e.g., Fabriko Acquisition Corp. v. Prokos, 536 F.3d 605, 609 (7th Cir. 2008) ("Nor does [movant] present any case law supporting its theory. It is not the job of this court to develop

arguments for [parties].""). Accordingly, Plaintiff's motion to extend the default judgment is denied.

## III. CONCLUSION

In conclusion, Ellis and Cingular-A have not met their burden to prove that the Court does not have personal jurisdiction over them. In their efforts to sell their products in the United States, they have expressed an intent to subject themselves to the law and fora of the United States. Because the Court has personal jurisdiction over Ellis and Cingular-A, their motion for relief from judgment pursuant to Rule 60(b)(4) is denied.

In addition, Plaintiffs' argument to extend a monetary default judgment against a non-party is unpersuasive. Accordingly, Plaintiffs' motion to extend judgment to CPL and Cingular-HK is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 14, 2015